**Appellate Department, Superior Court, Alameda**

[Civ. A. No. 262.   Feb. 2, 1959.]

CARL D. LINDBERG, Respondent, v. MICHAEL COUTCHES, Appellant.

830

Purchio & Fairwell and J. W. Morony for Appellant.

Paul N. McCloskey, Jr., for Respondent.

QUAYLE, J. pro tem.*—This appeal comes before the court on an agreed statement of facts after judgment in favor of plaintiff in an action for breach of warranty arising out of the sale of a used "Cessna 195" aircraft in which damages in the sum of $1,200.73 were awarded against defendant. The amount of damages is not an issue here. The defendant appeals, contending that the sale was made without warranty, express or implied.

On April 20, 1957, while engaged in the business of selling aircraft, appellant agreed in writing to sell to respondent a certain "Cessna 195" aircraft for $7,150. A printed clause in the contract provided——

"It is agreed that the aircraft herein sold is sold as is, where is, unless otherwise specified."

A handwritten insertion in the contract, under the term "Remarks" provided: "Deposit subject to financial approval and mechanical approval."

Prior to the execution of the contract, respondent made known to appellant that he proposed to use the aircraft immediately in the aerial photography business. Respondent and appellant made a short test flight in the aircraft before respondent took delivery. Appellant made no statement of any kind to indicate that the aircraft was in any way unfit for respondent's proposed use.

Respondent did not accept delivery of the aircraft until he had employed Mr. Skid Meissner, a duly licensed CAA mechanic and inspector to give the aircraft a 100-hour check and complete mechanical examination. After correcting several minor defects he certified the aircraft to be merchantable and airworthy under CAA regulations. Mr. Meissner, stipulated to be an expert on aircraft mechanics, testified that prior to the time of sale and his examination, a piece of shim stock had been inserted between the crankshaft and oil-retaining enclosing sleeve; that such piece of shim stock concealed a worn area in the crankshaft and further kept a serious oil leakage problem from becoming apparent upon any reasonable investigation; that such shim stock could only be discovered upon a major overhaul of the aircraft; that this condition

---

*Assigned by Chairman of Judicial Council.

made the aircraft both unmerchantable and non-airworthy under existing CAA rules.

It was Mr. Meissner's expert opinion that the shim stock had been inserted at some time prior to appellant's acquisition of the aircraft. The appellant testified that he did not know of the presence of the shim stock. He had purchased the aircraft for $6,850 the previous month from Vesta Aircraft, a used aircraft sales organization. Appellant then advertised the aircraft for sale at a price of $8,450, believing it had flown approximately 200 hours since its last major overhaul.

After commencing negotiations with respondent, the arrival of the aircraft's log books from Vesta Aircraft showed that 560 hours flying time had been put on the engine since its last major overhaul. The testimony indicated that major overhaul on an engine of this type was required between 800 and 1,000 hours. Because of this disclosure, appellant reduced the sales price to respondent to $7,150, the figure inserted in the written contract.

After taking delivery of the aircraft, respondent entered into certain commitments for its use in aerial photography. During the month of June, 1957, increased oil leakage caused respondent to submit the aircraft for further examination after flying it only 25 hours. After several attempts, Mr. Meissner discovered the shim stock and immediately grounded the aircraft.

Appellant's first contention is that there was no express warranty connected with this sale. Respondent makes no issue of this. He relies exclusively on an implied warranty arising under subdivision 1 of section 1735 of the Civil Code.

Appellant contends that no such implied warranty arises because there was no representation made by seller and relied upon by buyer, and furthermore, the terms of the agreement of sale disclaimed warranty.

The implied warranty that the goods shall be reasonably fit for buyer's particular purpose exists only "where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment." (Civ. Code, § 1735, subd. 1.) By advertising and offering a used "Cessna 195" aircraft for sale without indicating any inability to sustain flight, appellant impliedly represented that it was reasonably fit for the purpose for which it is intended, namely, sustained flight.

832

■ The 1948 edition of Williston on Sales (§ 231, in vol. 1, at p. 591), states:

". . . the seller by the very act of offering his goods for sale, asserts or represents that they are merchantable articles of their kind or are fit for some special purpose and that the buyer relies upon this implied assertion or representation."

■ Section 1735 of the Civil Code is a part of the Uniform Sales Act as adopted in California and it extends the warranty of fitness for its intended use to used articles as well as new articles. *Drumar Min. Co.* v. *Morris Ravine Min. Co.*, 33 Cal.App.2d 492 [92 P.2d 424] ; 1 Williston on Sales, 575 (§ 232) ; 43 Cal.Jur.2d, 263.

■ Appellant claims that the use of the trade name "Cessna 195" in the agreement of sale negates warranty under subdivision 4 of section 1735 of the Civil Code. This subdivision provides that "in case of a contract to sell or a sale of a specified article under its patent or other trade name, there is no implied warranty as to its fitness for any particular purpose."

There is nothing in the agreed statement of facts that indicates that this aircraft was ordered by its trade name, or that the buyer was seeking a "Cessna 195." On the other hand it does appear that appellant had this used aircraft and offered it for sale. That after negotiation the parties reduced their bargain to writing and the use of the trade name "Cessna 195" was merely a manner of designating the article sold. ■ Mere description of an article by its trade name is not conclusive, if other conditions justify a finding of the existence of an implied warranty of fitness. *Bagley* v. *International Harvester Co.*, 91 Cal.App.2d 922 [206 P.2d 43].

■ It cannot be successfully contended that respondent did not rely on appellant's implied representation that the aircraft in question was airworthy. He disclosed to appellant during negotiations that he needed the aircraft for immediate use in the aerial photograph business. This required the immediate use of the aircraft in flight. It can be inferred that he would not have bought the aircraft had he known that it could not be so used. The court takes judicial notice of the Federal Civil Aeronautics Act of 1938 which provides: "It is unlawful for any person to operate in air commerce any civil aircraft for which there is not currently in effect an airworthiness certificate." 610 Civil Aeronautics Act of 1938 (49 U.S. Code § 560(a).)

Therefore immediate use of the aircraft in flight, as required

by the respondent, was impossible because the aircraft in fact was not airworthy.

Next let us give consideration to appellant's contention that the terms of the written agreement of sale constituted a disclaimer of warranty. In the printed portion of the contract it provided that the aircraft was sold "as is, where is, unless otherwise specified." Elsewhere in the agreement there appeared in handwriting the words "Deposit subject to financial approval and mechanical approval." It seems unnecessary to consider whether one of these provisions supersedes the other because of the manner in which it appeared on the face of the contract. They can most reasonably be reconciled from the context of the agreement. The printed form contemplated a disclaimer of warranty unless the parties expressed a different intent by some other provision in the document. The "unless otherwise specified" provision was used by respondent and appellant here when they inserted the condition that the "Deposit subject to . . . mechanical approval."

Thereby the parties expressed their intention that the aircraft should be mechanically fit for its intended purpose. Buyer was accorded the right to withdraw from the sale if the aircraft was not mechanically fit. The disclaimer originally set forth in the contract was thereby modified so as not to affect the warranty of mechanical fitness, which in essence meant airworthiness.

The law seems clear that only an express disclaimer will eliminate the implied warranty of fitness. Furthermore disclaimer of seller's implied warranty is strictly construed against the seller. *Burr* v. *Sherwin Williams Co.*, 42 Cal.2d 682 [268 P.2d 1041].

The reasonable effect to be given to the terms of this agreement of sale would seem to be that responsibility be imposed upon the buyer to inspect and withdraw from the sale if reasonable inspection revealed mechanical defects; but that seller remained responsible for mechanical defects which reasonable inspection could not reveal.

Subdivision 3 of section 1735 of the Civil Code provides: "If the buyer has examined the goods, there is no implied warranty as regards defects which such examination ought to have revealed."

This negates warranty only as to defects that could be discovered by reasonable inspection. *Webster* v. *Klassen*, 109 Cal. App.2d 583 [241 P.2d 302]; *Moore* v. *Hubbard & Johnson*

*Lbr. Co.*, 149 Cal.App.2d 236, at 241 [308 P.2d 794]. Here it is admitted that reasonable inspection did not and would not reveal the mechanical defect wilfully concealed by someone who had access to the aircraft prior to the sale in question. Therefore the agreement of sale created only a conditional disclaimer of warranty which did not affect the particular latent defect that rendered the aircraft in question not airworthy.

Appellant points out that it is inequitable to hold him liable for a latent mechanical defect of which he was not aware; that since he did not discover it and could not discover it unless he undertook major overhaul of the aircraft, that he was also an innocent victim of a wilful act perpetrated by someone else.

However, the Uniform Sales Act extends warranty as to latent defects upon the seller whether they are known to him or not. *Tremeroli* v. *Austin Trailer etc. Co.*, 102 Cal.App.2d 464 [227 P.2d 923]; 43 Cal.Jur.2d 256. The defect was admittedly latent. The expert testimony indicated that it was wilfully concealed by one of appellant's predecessors in interest.

A similar result obtained in *Regula* v. *Gerber*, 70 N.E.2d 662, where, under the Uniform Sales Act in Ohio (Ohio G.C. 8395), a purchaser acquiring a used automobile for transportation was relieved from his contract because loose connecting rod bearings rendered the vehicle unroadworthy. Seller's contention, that he was unaware of the defect because some person unknown had concealed it by putting heavy oil in the crankcase, was of no avail in the face of warranties implied by law upon the seller.

If this is an attempt by appellant to seek the application of equity to the issues here involved it should be recalled first, that warranty is a codification of the legal remedies developed primarily from the common law; furthermore, if appellant is held liable here he may seek redress against Vesta Aircraft, from whom he purchased the aircraft. They not only may be liable on their warranty but it is possible they concealed the defect or at least knew of it. On the other hand, if respondent is denied relief here, he is without remedy.

The judgment appealed from is affirmed.

Wagler, P. J., and Hoyt, J., concurred.