Filed 4/29/15  Ennis v. Chase Bank CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| MICHAEL J. ENNIS,<br><br>     Plaintiff and Appellant,<br><br>v.<br><br>CHASE BANK N.A. et al.,<br><br>     Defendants and Respondents. | A141839<br><br>(Contra Costa County<br>Super. Ct. No. C1300867) |

Michael J. Ennis filed this lawsuit after respondents JPMorgan Chase Bank, N.A. and California Reconveyance Company initiated proceedings to foreclose on his home. The trial court allowed Ennis to amend his original complaint, but it then sustained a demurrer to the amended complaint without giving Ennis further leave to amend.  On appeal, Ennis argues that the demurrer was improperly sustained because the amended complaint sufficiently alleged that respondents lacked authority to initiate the foreclosure. We affirm.

I.

FACTUAL AND PROCEDURAL
BACKGROUND

According to the allegations of the amended complaint, Ennis obtained a variable-rate mortgage for his Walnut Creek home through Long Beach Mortgage Co. in February 2007.  California Reconveyance Company was the trustee under the deed.  The amended complaint alleged that Long Beach at some point removed the first pages of the mortgage document and replaced it with a substitute note.  This new note allowed the interest rate to adjust between 8.975 percent and 14.975 percent, which allegedly made it a predatory

1

loan as defined by the Office of the Comptroller of the Currency. The substituted note was transferred to Washington Mutual Bank, which paid "a massive fee-origination payoff" to Long Beach knowing its "deceitful business practices."

Ennis's mortgage was assigned to Chase in April 2011when Chase acquired Washington Mutual's assets. According to the amended complaint, this assignment was "perjured and falsified." Although somewhat confusing, the allegations seemingly contend that the entity purporting to assign the note lacked authority to assign it, and the ensuing notice of default amounted to a "scheme to perpetrate a theft of [Ennis's] real property." On April 4, 2013, California Reconveyance issued a notice of trustee's sale.[1]

Later that month, Ennis initiated this lawsuit against Chase and California Reconveyance. The trial court sustained respondents' demurrer to the original complaint, and Ennis then filed his amended complaint. The gravamen of the amended complaint is that because of various errors and misrepresentations, his mortgage was never validly transferred to Chase, and it is thus not clear who currently holds the note. Ennis alleged causes of action for wrongful foreclosure under Civil Code section 2924,[2] declaratory relief, slander of title, and cancellation of instruments. He sought a permanent injunction restraining respondents from selling his home, as well as general and punitive damages from California Reconveyance in the amount of $50 million.

Respondents demurred to the amended complaint on September 13. In support of their demurrer, they requested the trial court take judicial notice of the following documents: (1) the original deed of trust recorded on Ennis's property in February 2007, (2) the September 2008 purchase-and-assumption agreement between the Federal Deposit Insurance Corporation and Chase that transferred Washington Mutual's assets and liabilities to Chase, (3) the April 28, 2011, assignment of deed of trust by which Chase assigned its interest in the deed of trust to Deutsche Bank National Trust Company, as trustee for WaMu Series 2007-HE1 Trust, (4) an April 28, 2011, notice of default

---

[1] All further date references are to the 2013 calendar year unless otherwise specified.

[2] All statutory references are to the Civil Code.

2

showing that Ennis's loan was $78,789.04 in arrears, and (5) four notices of trustee's sale, dated July 29, 2011; February 8, 2012; October 15, 2012; and April 4.

Ennis filed a one-page response to the demurrer, arguing that respondents had failed to file an answer to his complaint and should therefore be "defaulted." Following a hearing at which Ennis did not appear, the trial court sustained respondents' demurrer without leave to amend. It is unclear whether the trial court ruled on respondents' request for judicial notice. Ennis thereafter filed a motion for reconsideration under section 1008, which was denied.

## II.
### DISCUSSION

*A. The Standard of Review.*

The rules governing our review of the trial court's ruling are well settled. "We review de novo the trial court's order sustaining a demurrer." (*Cansino v. Bank of America* (2014) 224 Cal.App.4th 1462, 1468.) In doing so, this court's only task is to determine whether the complaint states a cause of action. (*Gentry v. eBay, Inc.* (2002) 99 Cal.App.4th 816, 824.) We accept as true all well-pleaded allegations in the operative complaint, and we will reverse the trial court's order of dismissal if the factual allegations state a cause of action on any available legal theory. (*Id.* at p. 825; *Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 6.) We treat respondents' demurrer as admitting all properly pleaded material facts, but not contentions, deductions, or conclusions of fact or law. (*Evans*, at p. 6.) We also consider matters that may be judicially noticed, and a " ' "complaint otherwise good on its face is subject to demurrer when facts judicially noticed render it defective." ' " (*Ibid.*) Where, as here, "the trial court sustains a demurrer without leave to amend, we review the determination that no amendment could cure the defect in the complaint for an abuse of discretion. [Citation.] The trial court abuses its discretion if there is a reasonable possibility that the plaintiff could cure the defect by amendment. [Citation.] The plaintiff has the burden of proving that amendment would cure the legal defect, and may meet this burden on appeal. [Citations.]" (*Cansino*, *supra*, at p. 1468.)

3

Although Ennis offered no substantive arguments in the trial court in response to respondents' demurrer, he may advance on appeal new legal theories why the allegations of the complaint state a cause of action. (*20th Century Ins. Co. v. Quackenbush* (1998) 64 Cal.App.4th 135, 139, fn. 3.) Still, our review is limited to issues that have been adequately raised and supported in the appellate briefs. (*Reyes v. Kosha* (1998) 65 Cal.App.4th 451, 466, fn. 6.) The amended complaint alleged four causes of action: wrongful foreclosure under section 2924, declaratory relief, slander of title, and cancellation of instruments. But Ennis's opening brief only argues the wrongful-foreclosure claim. We therefore deem the others abandoned. (*Bagley v. International Harvester Co.* (1949) 91 Cal.App.2d 922, 926 [where demurrer is sustained without leave to amend, appellant's failure to advance arguments in connection with one of several causes of action purportedly stated in complaint deemed an abandonment of such cause of action]; see also *Tiernan v. Trustees of Cal. State University & Colleges* (1982) 33 Cal.3d 211, 216, fn. 4 [issues not raised on appeal are waived].)

B.     *The Nonjudicial Foreclosure Process.*

We begin with a general overview of the nonjudicial foreclosure process. A nonjudicial foreclosure sale is a "quick, inexpensive[,] and efficient remedy against a defaulting debtor/trustor." (*Moeller v. Lien* (1994) 25 Cal.App.4th 822, 830.) To preserve this remedy for beneficiaries while protecting the rights of borrowers, "sections 2924 through 2924k provide a comprehensive framework for the regulation of a nonjudicial foreclosure sale pursuant to a power of sale contained in a deed of trust." (*Ibid.*) Under a deed of trust, the trustee holds title and has the authority to sell the property in the event of a default on the mortgage. (See *Haynes v. EMC Mortgage Corp.* (2012) 205 Cal.App.4th 329, 333-336.) To initiate the foreclosure process, "[t]he trustee, mortgagee, or beneficiary, or any of their authorized agents" must first record a notice of default. (§ 2924, subd. (a)(1).) The notice of default must identify the deed of trust "by stating the name or names of the trustor or trustors" and provide a "statement that a breach of the obligation for which the mortgage or transfer in trust is security has occurred" and a "statement setting forth the nature of each breach actually known to the

4

beneficiary and of his or her election to sell or cause to be sold the property to satisfy [the] obligation . . . that is in default." (§ 2924, subd. (a)(1)(A)-(C).)  After three months, a notice of sale must then be published, posted, mailed, and recorded in accordance with the time limits prescribed by the statute.  (§§ 2924, subd. (a)(3), 2924f.)

" 'The purposes of this comprehensive scheme are threefold:  (1) to provide the creditor/beneficiary with a quick, inexpensive[,]  and efficient remedy against a defaulting debtor/trustor; (2) to protect the debtor/trustor from wrongful loss of the property; and (3) to ensure that a properly conducted sale is final between the parties and conclusive as to a bona fide purchaser.' "  (*Gomes v. Countrywide Home Loans, Inc.* (2011) 192 Cal.App.4th 1149, 1154.)

> C.      *Ennis's Cause of Action for Wrongful Foreclosure Fails.*

"The 'traditional method' to challenge a nonjudicial foreclosure sale 'is a suit in equity . . . to have the sale set aside and to have the title restored.'  [Citation.]  Three elements must be proven:  '(1) the trustee . . . caused an illegal, fraudulent, or willfully oppressive sale of real property pursuant to a power of sale in a . . . deed of trust; (2) the party attacking the sale suffered prejudice or harm; and (3) the trustor . . . tenders the amount of the secured indebtedness or was excused from tendering.' "  (*Ram v. Onewest Bank, FSB* (2015) 234 Cal.App.4th 1, 10-11.)  Ennis vigorously disputes Chase's ownership of his mortgage and argues at length that the bank did not have authority to initiate foreclosure proceedings.  But Ennis lacks standing to assert this claim and does not allege prejudice from the alleged ownership issue in any event.

A debtor in default is not in a position to complain that an unauthorized entity has initiated a foreclosure because, even assuming the complaint's truth, the injured party is not the debtor but is instead the entity owning the unpaid mortgage.  Thus, trustor-debtors are generally precluded from challenging "the right, power, and authority of a foreclosing 'beneficiary' or beneficiary's 'agent' to initiate and pursue foreclosure." (*Jenkins v. JPMorgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497, 511, citing *Debrunner v. Deutsche Bank National Trust Co.* (2012) 204 Cal.App.4th 433, 440-442 and *Gomes v. Countrywide Home Loans, Inc.*, *supra*, 192 Cal.App.4th at pp. 1154-1157.)  "[N]owhere

5

does the [nonjudicial foreclosure] statute provide for a judicial action to determine whether the person initiating the foreclosure process is indeed authorized, and we see no ground for implying such an action." (*Gomes*, at p. 1155.) Permitting such an action "would unnecessarily 'interject the courts into [the] comprehensive nonjudicial scheme' . . . and 'would be inconsistent with the policy behind nonjudicial foreclosure of providing a quick, inexpensive[,] and efficient remedy. [Citation.]' " (*Jenkins*, at p. 512.)

Ennis relies on *Glaski v. Bank of America* (2013) 218 Cal.App.4th 1079, 1095-1097, which held under applicable New York law that a transfer of a deed of trust in contravention with its terms is "void, not merely voidable." His reliance is misplaced. *Glaski* turned on the application of New York's foreclosure law, and we join the many courts that have rejected its analysis and have declined to apply it to California's nonjudicial foreclosure laws.[3] (See *In re Davies* (9th Cir. 2014) 565 Fed.Appx. 630, 633; *Moran v. HSBC Bank USA, N.A.* (N.D.Cal., Aug. 4, 2014, No. 5:14-cv-00633-LHK) 2014 WL 3851305, at *16 ["reliance on *Glaski* is misplaced, both because *Glaski* does not state the majority rule and because its reasoning is unpersuasive"]; *Ordono v. US Bank N.A.* (N.D.Cal., July 21, 2014, No. 14-cv-00774-JD) 2014 WL 3610952, at *10 ["In the absence of controlling authority from the Supreme Court or the Ninth Circuit, this Court agrees with the well-settled majority view"]; *Banares v. Wells Fargo Bank, N.A.* (N.D.Cal., Mar. 7, 2014, No. C–13–4896 EMC) 2014 WL 985532, at *4-5; *Covarrubias v. Fed. Home Loan Mortgage Corp*. (S.D.Cal., Jan. 28, 2014, No. 12cv2775 WQH) 2014 WL 311060, at *4-5; *Rivac v. Ndex West LLC* (N.D.Cal., Dec. 17, 2013, No. C 13–1417 PJH) 2013 WL 6662762, at *4 ["This court is persuaded by the 'majority position' of courts within this district, which is that *Glaski* is unpersuasive"]; *Subramani v. Wells Fargo Bank N.A.* (N.D.Cal., Oct. 31, 2013, No. C 13–1605 SC) 2013 WL

---

[3] Whether a borrower in an action for wrongful foreclosure has standing to challenge an assignment of the note and deed of trust on the basis of defects allegedly rendering the assignment void is currently pending before the California Supreme Court. (*Yvanova v. New Century Mortgage Corp*. (2014) 226 Cal.App.4th 495, review granted Aug. 27, 2014, S218973.)

6

5913789, at *3; *Newman v. Bank of New York Mellon* (E.D.Cal., Oct. 11, 2013, No. 1:12-CV-1629 AWI GSA) 2013 WL 5603316, at *3, fn. 2 ["no courts have yet followed *Glaski* and *Glaski* is in a clear minority"]; *Diunugala v. JPMorgan Chase Bank, N.A.* (S.D.Cal., Oct. 3, 2013, No. 12cv2106–WQH–NLS) 2013 WL 5568737, at *8; *In re Sandri* (Bankr. N.D.Cal. 2013) 501 B.R. 369, 374-377.)

Ennis also has not shown prejudice because he has failed to explain how he would have avoided foreclosure had his mortgage never been transferred. As set forth in the concurring opinion in *Ram*: "[P]rejudice is an element of a claim for wrongful foreclosure. (*Herrera v. Federal National Mortgage Assn.* (2012) 205 Cal.App.4th 1495, 1507; *Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256, 272; see *Little v. CFS Service Corp.* (1987) 188 Cal.App.3d 1354, 1361-1362.) It is required not only for small deficiencies, but for big ones as well. For example, in *Fontenot*, . . . this court required a showing of prejudice for a claim that the entity that conducted a foreclosure sale was not properly assigned the deed of trust: '[A] plaintiff in a suit for wrongful foreclosure has generally been required to demonstrate the alleged imperfection in the foreclosure process was prejudicial to the plaintiff's interests. . . . Even if [a nominee beneficiary] lacked authority to transfer the note [to the entity that eventually foreclosed], it is difficult to conceive how [the borrower] was prejudiced by [the] purported assignment . . . .' (*Fontenot*, at p. 272, citations omitted.) This holding recognized that the entity prejudiced in such a case is not the borrower, but rather the proper beneficiary that was entitled to recourse on the loan. Similarly, relying on *Fontenot*, *Herrera* held that an allegation of prejudice was required even if the purported beneficiary lacked authority to foreclose or execute a substitution of trustee. (*Herrera*, at pp. 1505-1507.)" (*Ram v. Onewest Bank, FSB*, *supra*, 234 Cal.App.4th at pp. 22-23 (conc. opn. of Humes, J.).)

Ennis does not claim there is no basis for the issuance of notices of default and a trustee's sale—only that the party issuing those notices was not entitled to do so. "Because a promissory note is a negotiable instrument, a borrower must anticipate it can and might be transferred to another creditor. As to plaintiff, an assignment merely

7

substituted one creditor for another, without changing [his] objections under the note. Plaintiff . . . does not allege that the transfer [of his loan] interfered in any manner with [his] payment of the note [citation], nor that the original lender would have refrained from [starting the] foreclosure [process] under the circumstances presented." (*Fontenot v. Wells Fargo Bank, N.A.*, *supra*, 198 Cal.App.4th at p. 272.)  Nor does Ennis allege he could tender the amount of any secured indebtedness, another essential element of a challenge to a nonjudicial foreclosure sale.  (*Ram v. Onewest Bank, FSB*, *supra*, 234 Cal.App.4th at pp. 10-11.)

In our review of the record, the only reference we find to the amount Ennis must tender is contained in a notice of default respondents sought to have judicially noticed indicating that he was $78,789.04 in arrears as of April 28, 2011.  As he confirmed at oral argument, Ennis does not dispute that he is in default.  He contends, however, that the trial court improperly took judicial notice of the documents respondents presented to the trial court to establish a valid transfer of the loan.[4]  We cannot tell from our review of the record whether judicial notice of these documents was in fact granted.  But regardless of these documents, the controlling questions are whether Ennis has standing to complain about the transfer and whether he, rather than the allegedly proper holder of the note, was prejudiced.  We conclude he has demonstrated neither.

Finally, we are unable to conclude that the trial court abused its discretion in sustaining the amended complaint without giving Ennis leave to amend it yet again. Ennis bears the burden on appeal of showing there is a reasonable possibility any defect in a pleading may be cured by amendment.  (*Cansino v. Bank of America*, *supra*, 224 Cal.App.4th at p. 1468; *Palm Springs Tennis Club v. Rangel* (1999) 73 Cal.App.4th

---

[4] Ironically, Ennis requests in his opening brief that this court take judicial notice of Exhibit A to respondents' request for judicial notice in the trial court, the original deed of trust recorded on Ennis's property in February 2007.  He also requests that this court take judicial notice of documents in various regulatory proceedings and court actions against Chase, most, if not all, of which appear to have nothing to do with the current lawsuit against respondents.  In any event, because Ennis did not comply with California Rules of Court, rule 8.252(a) by, among other things, filing a separate noticed motion, we deny his request.

1, 7.)  But he has failed to show how the amended complaint might be amended to state a cause of action on any theory, and he can therefore not show that the trial court abused its discretion.  (*Palm Springs Tennis Club*, at p. 8; see also *Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852 [not appellate court's role to construct legal theories or arguments appellant fails to raise].)

> D.    *No Reversal Warranted Because of Alleged Defects in Service of Demurrer to the Amended Complaint.*

Finally, we briefly address Ennis's contention that respondents' demurrer was procedurally defective.

> 1.  Background

The proof of service filed with respondents' demurrer to the amended complaint stated that Ennis was served with "Defendants' Notice of Demurrer and Demurrer to the *First Complaint*."  (Italics added, unnecessary capitalization omitted.)  This was a typographical error, because the document to be served was a demurrer to the first *amended* complaint.  The proof of service also stated that Ennis was served with the memorandum of points and authorities supporting the demurrer.

Three days after they filed their demurrer, respondents on September 16 filed an amended notice of the demurrer to notify Ennis that a hearing on the motion would take place at 9:00 a.m. on December 4 in "Department 3" of the superior court.  Apparently because the hearing actually was to take place in Department 33, respondents filed a second amended notice of demurrer on September 18 correcting the reference to the courtroom.

In his motion to vacate/reconsider the order sustaining respondents' demurrer, Ennis complained that he had called the courtroom on December 4 (the date of the hearing on the demurrer) so that he could appear telephonically, but his connection was broken "due to some electronic glitch within the court's own system."  He did not claim the proof of service on the original demurrer to the amended complaint was confusing or prevented him from responding to it.

9

## 2. Analysis

For the first time on appeal, Ennis argues that the reference to a demurrer to the "FIRST COMPLAINT" in respondents' proof of service, as opposed to the first *amended* complaint, created confusion. He claims the service of an amended notice of demurrer was meant to further confuse him "as to what was actually filed in their first attempt to demur [to] the complaint." Ennis also seems to contend that respondents should have re-served the original memorandum of points and authorities along with their amended notices of the hearing date. These contentions lack merit. First, Ennis forfeited them by not raising them below. (*North Coast Business Park v. Nielsen Construction Co.* (1993) 17 Cal.App.4th 22, 28-29.) Second, even if he had not forfeited his objections, he has not demonstrated that he was prejudiced by any alleged defects. Ennis's request to vacate the order sustaining the demurrer to the amended complaint acknowledged that respondents had demurred to the amended complaint and that he had received notice of the hearing. He was unable to participate in the hearing because he was disconnected when he tried to appear telephonically, not because of any alleged defect in notice. And the fact Ennis knew when the hearing was scheduled and tried to participate in it demonstrates respondents adequately provided him with notice of the hearing. As such, Ennis fails to establish reversible error.

## III.
### DISPOSITION

The judgment is affirmed. Respondents shall recover their costs on appeal.

10

_____

Humes, P.J.

We concur:

_____

Margulies, J.

_____

Dondero, J.